IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BEACON SALES ACQUISITION, INC., *et al.*, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-01860 (RDA/WEF) |
| ) | |
| CAMERON ASHLEY BUILDING ) | |
| PRODUCTS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants Anthony Todd Bozeman, Derek Kacey Brown, and Cameron Ashely Building Products, Inc.'s (collectively, "Defendants") Motion to Dismiss for Failure to State a Claim. Dkt. 43. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is now ripe for disposition. Considering the Motion together with the Amended Complaint (Dkt. 37), Defendants' Memorandum in Support (Dkt. 44), Plaintiffs Beacon Sales Acquisition, Inc. and QXO Building Products, Inc.'s (collectively, "Plaintiffs") Opposition (Dkt. 47), and Defendants' Reply (Dkt. 50), this Court GRANTS the Motion for the reasons that follow.

## I. BACKGROUND

### A. Factual Background[1]

Dealers Choice is a brand of Plaintiff Beacon Sales Acquisition, Inc. ("Beacon Sales"), which does business as QXO. Dkt. 37 ¶ 17. Beacon Sales is in turn a wholly owned subsidiary of Plaintiff QXO Building Products, Inc. ("QXO"). *Id.* Dealers Choice operates in the roofing distribution business, buying materials directly from manufacturers and selling them to small retailers or local building material suppliers. *Id.* ¶¶ 26-28. With more than twenty branch locations throughout the South and Midwest United States, Dealers Choice has one of the largest inventories in the country and generates many millions of dollars in sales annually. *Id.* ¶ 29.

Defendant Cameron Ashley Building Products, Inc. ("CABP") is a direct competitor of Dealers Choice. *Id.* ¶ 86. CABP is a wholesale distributor of roofing, insulation, drywall, siding, and other specialty building products. *Id.* ¶ 86. CABP operates a physical network of more than sixty-five distribution centers throughout the United States. *Id.*

Defendants Derek Kacey Brown ("Brown") and Anthony Todd Bozeman ("Bozeman") are former employees of Dealers Choice. *Id.* ¶¶ 40, 54. Brown worked as Dealers Choice's Regional Vice President for the Southeast Region, with managerial responsibility over Dealers Choice branches in eleven states and supervisory authority over 109 employees. *Id.* ¶¶ 40-41. Bozeman worked as Sales Director – National Accounts and serviced Dealers Choice customers nation-wide. *Id.* ¶ 54. In the fall of 2018, both Brown and Bozeman signed "New Hire Non-

---

[1] For the purpose of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Competition/Non-Solicitation/Confidentiality Agreements," which contained non-competition, non-solicitation, and confidential information covenants. *Id.* ¶¶ 44-51.

Brown and Bozeman resigned from Dealers Choice on October 15 and 16, 2025, respectively. *Id.* ¶¶ 53, 67. At some point thereafter, Brown and Bozeman began employment with CABP. *Id.* In doing so, Brown and Bozeman joined senior employees Griffin Hamsley ("Hamsley") and Paul Berglin, who had similarly resigned from Dealers Choice and taken up employment with CABP. *Id.* ¶¶ 78, 85. Plaintiffs assert that Dealers Choice has had to alter its pricing and rebate programs due to these resignations. *Id.* ¶ 115.

At some point after October 15, 2025, Hamsley contacted an unidentified Dealers Choice customer on their personal cell phone and left a voice message advising the customer of his name and phone number, informing the customer that he formerly worked at Dealers Choice and now works at CABP, and requesting that the customer return his call. *Id.* ¶ 109. Hamsley had no relationship with this customer during his employment with CABP. *Id.* ¶ 110. Rather, the customer had been in a sales relationship with Brown. *Id.*

Plaintiffs allege that customers have reported Brown and Hamsley "actively calling customers, meeting with customers, inviting customers to a CABP trade show, and soliciting business across Alabama, Florida, and Georgia, (states they covered for Dealers Choice) on behalf of CABP." *Id.* ¶ 112. Plaintiffs similarly assert that Dealers Choice representatives have observed Brown's business card at customer locations and that Bozeman arranged a meeting with a Dealers Choice vendor to convince them to start selling through CABP. *Id.* ¶¶ 112-113.

B.  Procedural Background

On October 23, 2025, Plaintiffs filed their Complaint.  Dkt. 1.

On October 31, 2025, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.  Dkt. 9.  On November 3, 2025, Defendants filed their Opposition.  Dkt. 14.  On November 4, 2025, Defendants filed a motion to quash subpoenas.  Dkt. 16.  On November 5, 2025, the Court held a hearing on the motions, took evidence, and heard arguments.  Dkt. 19.  At the conclusion of that hearing, the Court granted the motion to quash and took the motion for injunctive relief under advisement.  *Id.*  On November 12, 2025, the parties filed their post-hearing briefs.  Dkts. 25, 26.  On November 14, 2025, the parties filed their responses to each others' post-hearing briefs.  Dkts. 30, 31.  On December 23, 2025, the Court issued a 30-page Memorandum Opinion and Order denying the motion for injunctive relief.  Dkt. 40.

On December 23, 2025, Plaintiffs filed an Amended Complaint.  Dkt. 37.  On January 6, 2026, Defendants filed a Motion to Dismiss for Failure to State a Claim with a Memorandum in Support.  Dkts. 42, 43.  Plaintiffs filed their Opposition on January 20, 2026.  Dkt. 47.  On January 26, 2026, Defendants filed a Reply Brief in Support of their Motion to Dismiss.  Dkt. 50.  On May 20, 2026, Plaintiffs filed a Request for Hearing,[2] which Defendants responded to on May 21, 2026.

II.    STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

---

[2] The Court understands that the Court may not have resolved the pending motions as quickly as Plaintiffs may have desired.  The Court notes, however, that this Division has been inundated with hundreds of habeas applications each of which requires expeditious review and each of which involves an individual in custody who desires release.  Nor do the Court's regular

550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).[3]

---

civil and criminal dockets stop progressing forward to take account of this new influx of cases. Indeed, at only seven months into the year, more than *two thousand* civil cases have been filed in the Alexandria Division alone and this District Judge has personally presided over five criminal trials. The Court treats each of its cases with the same level of importance that the parties treat this single case; accordingly, this Court has addressed this case in due course.

[3] Given this applicable legal standard, the Court does not consider the additional facts that it learned during the course of the injunction hearing in deciding the pending Motion.

## III.    ANALYSIS[4]

In their Memorandum in Support of their Motion to Dismiss, Defendants raise challenges to the sufficiency of all counts alleged by Plaintiffs in their Amended Complaint.    Each of Plaintiffs' counts are addressed in turn.[5]

### A.    Unfair Competition / Raiding (Count I)

Count I centers around an ill-defined notion of "unfair competition/raiding" that they allege gives rise to a cause of action.  Dkt. 37 ¶¶ 124-137.  In their Amended Complaint, Plaintiffs allege that CABP has "directly, intentionally, and systematically induced, solicited, lured away, and raided Dealers Choice's employees," and that this "conduct violates acceptable business standards and common laws, which prohibit unjust, inequitable, and unfair competition."  *Id.* ¶¶ 125-126. Plaintiffs acknowledge that such a claim does not exist under Virgina common law, conceding that "Virginia courts have not explicitly labeled such claims as 'raiding/unfair competition,'" but nonetheless argues that "the parameters now exist" for the recognition of such a cause of action. Dkt. 47 at 10.  Plaintiffs ostensibly find these "parameters" in the case *Salomon & Ludwin, LLC v. Winters*, wherein the Fourth Circuit defined the term "raiding" as "a competing firm swooping in to lure employees away from their current employer."  150 F.4th 268, 275 (4th Cir. 2025).

---

[4] Both Brown and Bozeman's employment contracts state that they will be interpreted and construed pursuant to the laws of the State of Delaware.  Dkt. 37 ¶¶ 52, 66.  However, both Plaintiffs and Defendants exclusively cite Virginia case law throughout their briefings, and Plaintiffs have not objected to Virginia law governing the issue.  This Court will therefore apply Virginia law.  *See Wiener v. AXA Equitable Life Insurance Company*, 58 F.4th 774, 781-82 (4th Cir. 2023) (finding that insurer waived application of Connecticut law by affirmatively litigating the case under North Carolina law).

[5] Defendants additionally challenge Plaintiff QXO's standing to assert certain of its claims. *See* Dkt. 44 at 28-29.  Because this Court dismisses Plaintiffs' claims without leave to amend, it does not reach this issue.

Plaintiffs' claim for "unfair competition/raiding" fails to state a claim upon which relief may be granted. In *Winters*, the Fourth Circuit did not recognize a stand-alone cause of action for unfair competition/raiding. Instead, it merely defined the term "raiding" as was used in an industry-wide employment document termed the "Protocol for Broker Recruiting." *Winters*, 150 F.4th at 272. Therefore, rather than recognizing a novel claim, the *Winters* Court merely interpreted the language of a specific employment contract by surveying a disputed term's place in the text of a contract, its ordinary meaning, and its industry-specific meaning. *Id.* at 273-77.[6] It is important to note here that "[a]bsent a strong countervailing federal interest, the federal court . . . should not elbow its way into this controversy to render what may be an 'uncertain and ephemeral' interpretation of state law." *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992) (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 122 n.32 (1984)). Considering that Count I is predicated on a nonexistent cause of action, it will be dismissed.

### B.      Breach of Contract (Counts II and III)

Plaintiffs' Counts II and III allege that both Brown and Bozeman violated provisions of their employment contracts with Dealers Choice. In particular, Plaintiffs allege that Defendant Brown's solicitation of customers of Dealers Choice, competitive employment with CABP, and disclosure of confidential business information violate the restrictive covenants contained within his employment contract. Dkt. 37 ¶¶ 139-152. Plaintiffs make these same breach of contract

---

[6] Indeed, the Fourth Circuit specifically held:

> Defendants' appeal requires us to review the district court's interpretation of raiding, which is a legal question. *See Scarborough v. Ridgeway*, 726 F.2d 132, 135 (4th Cir. 1984) (the "interpretation of a written contract is a question of law . . . .").

*Winters*, 150 F.4th at 274.

allegations against Defendant Bozeman, whose employment contract contained identical restrictive covenants. *Id.* ¶¶ 153-167.

In Virginia, the elements of a breach of contract claim are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Apex Advanced Tech. LLC v. RMSI Priv. Ltd.*, 2022 WL 4826335, at *7 (E.D. Va. Sep. 30, 2022) (citing *Filak v. George*, 267 Va. 612, 619 (2004)). Defendants contest the first of these elements, arguing that the restrictive covenants are unenforceable under Virginia law. Dkt. 44 at 22. Defendants further argue that the Complaint does not plausibly allege sufficient facts to show that the non-solicitation or non-disclosure covenants were violated, which would negate the second element. *Id.* Each argument will be addressed in turn.

### i.    Enforceability of the Restrictive Covenants

As an initial matter, this District Judge has previously recognized that it is proper for this Court to consider whether "Plaintiff[s] plausibly allege[] that Defendants[s] [were] under any legally enforceable obligation with respect to Plaintiff[s]" at the motion to dismiss stage. *Empower AI, Inc. v. Dillahy*, 2024 WL 4351437, at *5 (E.D. Va. Sep. 30, 2024). Plaintiffs contend that "it is critical to allow factual development before deciding whether restrictive covenants are enforceable." Dkt. 47 at 10. Plaintiffs are correct insofar as the Supreme Court of Virginia has stated that a demurrer "cannot be used to decide on the merits whether a restraint on competition is enforceable," because at that point plaintiffs have had no opportunity to "present evidence to demonstrate that the restraints" were justified. *Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 139, 145 (2013). Indeed, courts in the Eastern District of Virginia have frequently relied upon *Assurance* in denying motions to dismiss non-compete contract claims for overbreadth. *See*

8

*Tactical Rehab., Inc. v. Youssef*, 2024 WL 4712696, at \*7 (E.D. Va. Nov. 7, 2024) (compiling cases).

However, as this District Judge has previously recognized, if a plaintiff does "specif[y] the justification for the restrictive covenants" within their complaint, then this issue is circumvented by that plaintiff's already having adequately presented evidence in the complaint itself.[7] *Empower AI*, 2024 WL 4351437, at \*6. Thus, the "problem [that] arises when the party seeking to enforce the covenant faces a motion to dismiss without first having an opportunity to present evidence that the covenant is justified" is addressed by virtue of a plaintiff's prior explanation. *Eagle Paper Int'l, Inc. v. Cont'l Paper Grading Co.*, 726 F. Supp. 3d 541, 547-48 (E.D. Va. 2024). This dynamic has been recognized both by state courts in Virginia and federal courts in this District. *See Reading & Language Learning Ctr. v. Sturgill*, 94 Va. Cir. 94, at \*9 (Fairfax Cty. Cir. Ct. 2016) (finding the case distinguishable from *Assurance Data* given the plaintiff's identification of proposed business interests in its complaint); *Empower AI*, 2024 WL 4351437, at \*6 (finding that ruling on the merits of a non-solicitation provision would be premature when plaintiff did not specify its justification for the provision in the complaint); *Tactical Rehab.*, 2024 WL 4712696, at \*7 ("[E]ven with the Virginia Supreme Court's mandate in *Assurance*, [plaintiff] must plausibly allege facts to demonstrate the broad prohibitions in its non-compete are plausibly necessary to protect a legitimate business interest.").

---

[7] Numerous other courts applying Virginia law have similarly assessed the enforceability of restrictive covenants at the motion to dismiss stage. *See e.g.*, *GMS Indus. Supply, Inc. v. G & S Supply, LLC*, 441 F. Supp. 3d 221, 227-31 (E.D. Va. 2020) (ruling at the motion to dismiss stage that non-solicitation clauses were unenforceable in part and enforceable in part); *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 659-60 (W.D. Va. 2017) (finding at the motion to dismiss stage that a covenant to not compete was unenforceable); *Darton Env't, Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1028-31 (W.D. Va. 2018) (holding at the motion to dismiss stage that non-compete and confidentiality provisions were unenforceable).

Applying these principles to the instant case, Plaintiffs' pleading of a justification for the restrictive covenants contained in the employment contracts puts the enforceability of such provisions properly before this Court at the motion to dismiss stage. The Amended Complaint alleges that the restrictions in Defendants Brown and Bozeman's employment agreements are "reasonable as to scope, duration, and geography, especially given [Defendants'] responsibilities, as well as [their] extensive access to Dealers Choice's confidential information, trade secrets, and customers." Dkt. 37 ¶¶ 143, 158. The Amended Complaint further asserts that these employment agreements are necessary to protect several of Dealers Choice's enumerated business interests. Dkt. 37 ¶¶ 144, 159. Furthermore, the Amended Complaint provides additional factual support for the restrictions by describing Dealers Choice's confidential business information as a "critical component of winning business from customers" and detailing how the restrictions relate to the "highly competitive" roofing distribution business. Dkt. 37 ¶¶ 39, 26-36. The factual support that Plaintiffs provide is thus evidently more robust than the mere statement that a covenant was "critical to the arrangement" found to be insufficient in *Eagle Paper International, Inc.* 726 F. Supp. 3d at 549. Indeed, the factual support alleged here also exceeds the stated business interest that "schools often try to steal their therapists" found to be sufficient in *Sturgill*. 94 Va. Cir. 94, at *9. Consideration of the enforceability of the employment contracts is therefore appropriate.

The Court further takes note of the severability clauses contained within both the Brown and Bozeman agreements. *See* Dkt. 37 ¶¶ 49, 64. "A contract is either entire, meaning all its provisions are integral to the agreement of the parties, or severable." *Schuiling v. Harris*, 286 Va. 187, 193 (2013) (citing *Eschner v. Eschner*, 146 Va. 417, 422 (1926)). Virginia courts seek to sever unenforceable provisions if the contract at issue contains a severability clause. *GMS Indus. Supply, Inc. v. G & S Supply, LLC*, 441 F. Supp. 3d 221, 227-28 (E.D. Va. 2020). Thus, when "a

10

contract covers several subjects, some of whose provisions are valid and some void, those which are valid will be upheld if they are not so interwoven with those illegal as to make divisibility impossible." *Alston Studios, Inc. v. Lloyd V. Gress & Assocs.*, 492 F.2d 279, 285 (4th Cir. 1974).

Turning now to the enforceability of the employment agreements, Defendants argue that the Complaint fails to state a claim because each restrictive covenant is unenforceable under Virginia law and "there can be no breach of an unenforceable contract." Dkt. 44 at 23. The first of these restrictive covenants is termed the "Non-Competition" covenant, which states:

> "Employee agrees that for a period of twelve (12) months following the termination of Employee's employment for any reason, including resignation by Employee or termination by Beacon for any reason, that Employee will not directly or indirectly engage in the Roofing Distribution Business anywhere in the Territory other than on the Company's behalf. To "engage" in a business in the Territory means (a) to render services in or with respect to the Territory for that business, or (b) to own, manage, operate or control (or participate in the ownership, management, operation or control of) an enterprise engaged in that business in the Territory. "Territory" means any location within a seventy-five (75) mile radius of any branch of the Company which you manage or work from at the time of your termination."

Dkt. 37 ¶¶ 59, 45. Non-compete covenants such as these "will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interests, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." *Omniplex World Servs. Corp. v. US Investigations Servs.*, 270 Va. 246, 249 (2005). Furthermore, "where a non-compete clause is ambiguous, susceptible to two or more differing interpretations, one of which is overbroad and unenforceable, the entire clause fails even though it may be reasonable as applied to the specific circumstances." *Update, Inc. v. Samilow*, 311 F. Supp. 3d 784, 788 (E.D. Va. 2018) (citing *Pais v. Automation Prods.*, 36 Va. Cir. 230, 57-58 (Newport News Cir. Ct. 1995)).

The non-compete covenants at issue here cannot plausibly be said to be narrowly drawn to protect Dealers Choice's legitimate business interests, as they "prohibit[] a former employee from *any* form of employment with a competitor, including work *unrelated* to the employee's [prior]

11

work." *Lanmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524, 530 (E.D. Va. 2006) (emphasis in original).  Relevant to this determination are the non-compete covenants' complete bar on "directly or indirectly" engaging in the roofing distribution business, with "engage" defined in part as "render[ing] services."  Dkt. 37 ¶¶ 59, 45.  The restrictive covenants thus prohibit Brown and Bozeman from working in any role for any rival roofing business.  Although Virginia courts will enforce non-competition covenants that limit their scope to restricting the same or similar services to those that an employee provided an employer, non-competition covenants that contain "blanket prohibition[s] against working for a competitor" are unenforceable.  *Advanced Marine Enters., Inc. v. PRC Inc.*, 256 Va. 106, 119 (1998); *see also Sturgill*, 94 Va. Cir. 94, at *7 ("Restrictive covenants that prohibit employees from working in any capacity for a competitor are overbroad." (quoting *Strategic Enter. Sols. Inc. v. Ikuma*, 77 Va. Cir. 179, 182 (Fairfax Cnty. Cir. Ct. 2008))).  Indeed, it is difficult to imagine *any* employment position in which one does not "render services" for one's employer.  Considering that the non-compete covenants here consist of a singular prohibition, severability is impossible without engaging in prohibited "blue penciling" of the contract.  *See Job v. Simply Wireless, Inc.*, 160 F. Supp. 3d 891, 897-98 (E.D. Va. 2015) ("Virginia courts refuse to 'blue pencil,' or rewrite, such clauses so as to make them reasonable and enforceable.").  Thus, the non-compete covenants are unenforceable as a whole.

Defendants similarly take issue with the non-solicitation covenants of the employment contracts.  Dkt. 44 at 25.  The non-solicitation covenants of the Brown and Bozeman employment contracts provide that:

> "Employee agrees that for a period of twelve (12) months following the termination of Employee's employment that Employee will not directly or indirectly (a) solicit any Customer to purchase from any person other than the Company any service or product offered by the Company; (b) suggest that any Customer of Beacon or its affiliates (including those of companies acquired by Beacon) discontinue any business relationship with Beacon or its affiliates; (c) suggest that any Customer of

Beacon or its affiliates give its business to any other person, firm, corporation, partnership, association, entity, or other organization; (d) induce or attempt to induce any Employee, consultant, contractor, or representative or agent of Beacon or its affiliates to terminate their employment or other relationship with Beacon or its affiliates; (e) interfere with or disrupt the relationship of Beacon or its affiliates with its Employees, consultants, contractors, representatives or agents by hiring or soliciting the employment (or soliciting to retain the services) of any Employee, agent, consultant, contractor, or representative of Beacon or its affiliates. "Customer" means any person who purchased any product or service from the Company during the term of this Agreement or the 12 months prior to the date of Employee's separation of employment. For the purposes of this section, "Employee" means any person who is an employee of the Company as of the time of the solicitation in question."

Dkt. 37 ¶¶ 46, 60. "Solicitation clauses are reviewed under the same standards as those developed for non-competition clauses," and thus the Court applies the same considerations previously detailed. *Strategic Res., Inc. v. Nevin*, 2005 WL 3143941, at *4 (E.D. Va. 2005). Put simply, the non-solicitation covenants prohibit Brown and Bozeman from: (a) soliciting a customer to purchase products offered by Dealers Choice from another company, (b) suggesting that a customer discontinue its relationship or give its business to another company, and (c) interfering with the relationships between Beacon and its employees. The Amended Complaint does not allege a violation of what has been termed provision (c), and thus the Court's analysis centers on what has been termed provisions (a) and (b).

Beginning with provision (a), courts in both this District and Virginia have found that similar language is enforceable. For instance, in *Daston Corp. v. MiCore Solutions, Inc.*, the court upheld a non-solicitation provision stating that "[e]mployee covenants and agrees that Employee will not, directly or indirectly, solicit, invite or by any way, manner or means, attempt to induce any of Daston's Customers to do business with a Competitor," with "Customer" defined as those individuals receiving services during the employee's time with the employer. 80 Va. Cir. 611, at *1 (Fairfax Cnty. Cir. Ct. 2010). There, the court found persuasive that the clause applied only to a fixed universe of customers and only to solicitations for services directly competitive with those

13

provided by the plaintiff. *Id.* at *3. Not only is provision (a) similarly limited to a fixed universe of customers and products, but it is also significantly less expansive when considering the difference between the term "solicit" used here and the phrase "directly or indirectly, solicit, invite or by any way, manner or means, attempt to induce." *See also Samilow*, 311 F. Supp. 3d at 790 (upholding a covenant providing that the employee "will not . . . solicit any of [plaintiff's] customers or customer prospects within fifty (50) miles of any office, branch office, or production facility of [plaintiff] or with whom I had any contact during the term of my employment for the purpose of diverting or taking business from [plaintiff]").

In their Memorandum of Law in support of their Motion to Dismiss, Defendants rely solely upon the case *Nortec Communications, Inc. v. Lee-Llacer* to contest the enforceability of the non-solicitation provision. 548 F. Supp. 2d 226 (E.D. Va. 2008); Dkt. 44 at 25. However, an important distinction can be drawn between provision (a) at issue here and the related language at issue in *Nortec Communications*. There, the restriction on solicitation prevented an employee from "solicit[ing] orders for materials, services, and/or equipment, *of a kind like or similar to* services performed or materials or equipment provided, by the Company." *Nortec Commc'ns*, 548 F. Supp. 2d at 229 (emphasis added). The language "of a kind like or similar to" expanded the scope of restricted solicitation significantly beyond the prohibition on soliciting orders for "service[s] or product[s] offered by the Company" at issue here. Thus, the Court finds *Nortec Communications* to be distinguishable with respect to provision (a).

The same cannot be said about the enforceability of provision (b). The language "suggest" as used in this provision can immediately be recognized to be significantly broader in scope than the language "solicit" as used in provision (a). Indeed, this language is not narrowly tailored to Plaintiffs' legitimate business interests. *See id.* at 229, 231 (striking down a non-solicitation clause

14

preventing the employee from "urg[ing] or suggest[ing] that any customer or client of the Company discontinue doing business with the Company"). The language at issue could be construed to bring costly enforcement actions against employees for an expansive array of potential communication and thus bears a resemblance to contract provisions restricting employees from contacting *any* customer that Virginia courts have previously struck down. *See e.g.*, *Lasership Inc. v. Watson*, 79 Va. Cir. 205, at *8 (Fairfax Cnty. Cir. Ct. 2009) (holding a clause preventing an employee from "contacting in *any manner*, for *any purpose*, *any customer* of Lasership that was invoiced in the year before the employee left Lasership" overbroad and unenforceable as a matter of law (emphasis in original)). The Court therefore finds these particular provisions of the non-solicitation covenants unenforceable and excises them from the contract.

Finally, Defendants contest the enforceability of the confidentiality covenants of the employment agreements. Dkt. 44 at 5. The confidentiality covenants provide that:

"Employee agrees that Employee shall (a) maintain all Confidential Information in strict confidence and return to Beacon within one business day of Employee's termination of employment all Confidential Information in Employee's possession, custody or control, including Confidential Information in electronic form; (b) Employee shall not disclose any Confidential Information to anyone outside of Beacon; and (c) Employee shall not use any confidential information for Employee's own benefit or the benefit of any third party. "Confidential Information" shall mean non-public information regarding Beacon that is not generally known to the public, and Confidential Information shall include the following with respect to the Employee: (1) information regarding operations, assets, liabilities or financial condition; (2) information regarding price, sales, merchandising, marketing, capital expenditures, costs, joint ventures, business alliances, products, services or purchasing; (3) information regarding employees, sales agents or sales representatives; (4) customer lists or other information related to customers; (5) information regarding vendors, suppliers, distributors or other business partners; (6) forecasts, projections, budgets and business plans; (7) information regarding the planned or pending acquisitions, divestitures or other business combinations; and (8) trade secrets and proprietary information. Notwithstanding the foregoing, nothing herein prohibits or restricts you from making disclosures protected by state or federal law."

15

Dkt. 37 ¶¶ 48, 62. "The test for whether a confidentiality provision is enforceable involves the same balancing test applied to non-compete and non-solicitation agreements." *GMS Indus. Supply*, 441 F. Supp. 3d at 233.

Under Virginia law, confidentiality covenants that indefinitely prohibit disclosure are deemed not narrowly tailored to protect the employer's legitimate business interests and thus unenforceable. *See Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459, at \*8 (W.D. Va. Aug. 30, 2021) (holding that a nondisclosure covenant with no temporal limit is overbroad and not a narrowly tailored restraint on trade); *BB&T Ins. Servs., Inc. v. Thomas Rutherfoord, Inc.*, 80 Va. Cir. 174, at \*5 (2010) (finding that a perpetuity restriction causes a clause to be overly broad and not narrowly tailored to protect a legitimate business interest); *Lasership Inc*, 79 Va. Cir. 205, at \*8 (2009) (holding that a provision prohibiting an employee from disclosing any information, even if not proprietary or worthy of confidence, is unenforceable). Here, not only do the confidentiality covenants fail to include any temporal limitation, but they also extend to information that is either far from proprietary or loosely defined, such as "information regarding employees" or "information regarding operations." Dkt. 37 ¶¶ 48, 62. Therefore, these confidentiality covenants are not narrowly tailored to Dealers Choice's business interests and are unenforceable as a result.

In sum, the Court finds that Plaintiffs have failed to allege sufficient facts from which the non-competition and confidentiality covenants, as well as a portion of the non-solicitation clause, can plausibly be construed as enforceable under Virginia law. Accordingly, the Court dismisses the portions of Counts II and III relating to alleged breaches of these provisions. However, the Court finds that provision (a) of the non-solicitation covenant has plausibly been alleged to be enforceable under Virginia law.

ii.    Failure to Allege Facts Regarding Breach of Contract Claims

Regardless of the unenforceability of the provisions of the contract allegedly breached, Defendants further argue that "the Complaint does not plausibly allege specific facts . . . to demonstrate a violation of the non-solicitation covenants or the non-disclosure covenants in the agreements." Dkt. 44 at 22. Although Defendants' argument could apply to the alleged breach of the non-compete covenants, such an argument is not raised by Defendants and therefore only the alleged breaches of the non-solicitation and non-disclosure covenants are addressed here.

Plaintiffs make several factual allegations in support of an alleged breach of the non-solicitation covenant. First, Plaintiffs state that "at Brown's instruction, Hamsley contacted a Dealers Choice customer on the customer's personal cell phone and left a voice message advising the customer of his name . . . and requested that the customer return his call." Dkt. 37 ¶ 109. Second, Plaintiffs allege that Dealers Choice customers have reported Brown and Hamsely as having solicited business from Dealers Choice Customers and that representatives have observed Brown's business card, CABP brochures, and credit applications at customer locations. *Id.* ¶ 12. Third, Plaintiffs state that "Bozeman arranged a meeting with one of Dealers Choice's largest vendors and sought to convince this vendor to start selling through CABP." *Id.* ¶ 13.

None of these factual allegations give rise to a viable claim. In regard to the first, mere *contact* with a customer who had a sales relationship with Dealers Choice is evidently distinct from the actions prohibited by the non-solicitation covenants. Through this phone call, Hamsley did not "solicit any Customer to purchase from any person other than the Company," "suggest that any Customer . . . discontinue any business relationship," or "suggest that any Customer give its business to any other person." Dkt. 37 ¶ 46. Furthermore, Hamsley is not a defendant here and Plaintiffs fail to persuade this Court that a call *by Hamsley* establishes a breach *by Brown*. The

17

second allegation similarly falls flat. Plaintiffs do not set forth factual allegations that Brown or Hamsley solicited products offered by Dealers Choice, suggested that the customers in question discontinue business with Beacon or its affiliates, or suggested that the customers give their business to CABP at the expense of Dealers Choice. Indeed, this allegation is primarily supported by the purely conclusory statement that Brown and Hamsley have been "soliciting business," *Id.* ¶ 12, which is inherently broad and does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And, again, *Hamsley* is not a defendant here. Finally, the third allegation also does not support a viable claim. The non-solicitation clauses refer only to "Customers" of Beacon Sales, defined as "any person who purchased any product or service from the Company." *Id.* ¶¶ 46, 60. Here, Plaintiffs refer to a "vendor" that Bozeman sought to convince to "start selling *through* CABP." *Id.* ¶ 113 (emphasis added). The term "vendor" ordinarily refers to one who offers products to another, not one who purchases from a company itself. In the absence of any factual support to suggest that this vendor was a "Customer" for the purposes of the non-solicitation covenant, any claim predicated on this event is conclusory.[8] Each alleged violation of the non-solicitation provision therefore does not provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

---

[8] Plaintiffs are not clear as to whether they understand their relationship with this vendor as that between a business and a customer such that it would fall under provisions (a) through (c) of the non-solicitation covenants, or as some other relationship such that it could fall under provisions (d) through (e) of the non-solicitation covenants. *Compare* Dkt. 37 ¶¶ 144 (listing protection of "customers" and "vendors" as distinct business interests) *with* Dkt. 47 at 13 (citing a range of paragraphs including the vendor contact allegation in support of the contention that Dealers Choice's customers have been solicited). Plaintiffs appear to the Court to be arguing the latter. Regardless, even should Plaintiffs be arguing the former, they have failed to allege that the vendor is a "consultant[], contractor[], representative[] or agent[]" as would be necessary to sustain a claim predicated upon this clause. Dkt. 37 ¶¶ 60.

18

Plaintiffs' allegations concerning a breach of the non-disclosure covenants fare no better. Plaintiffs' Amended Complaint itself couches this claim in speculative terms, stating that "[t]he senior leaders hired by CABP will inevitably use and disclose Dealers Choice's confidential and proprietary business information in their competitive employment," *Id.* ¶ 9, and that "Dealers Choice *believes*, and therefore avers, that Brown and Bozeman also retained and/or possess confidential customer information . . . and is using that information to engage in the Roofing Distribution Business for CABP." *Id.* ¶ 119 (emphasis added). Such theoretical future endeavors by the Defendants fail to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see General Assur. of Am., Inc. v. Overby-Seawell Co.*, 533 F. App'x. 200, 205 (4th Cir. 2013) (finding an unsupported speculation that confidential information "must have been disclosed" insufficient to create a genuine dispute of material fact to prevent summary judgment).

Plaintiffs' only factual support for a potential breach of the non-disclosure covenants comes in the form of the previously detailed phone call to a Dealers Choice customer. Dkt. 37 ¶¶ 109-110. However, it simply cannot be inferred that confidential information was used to complete this phone call when considering that Plaintiffs have not properly alleged that Brown retained any confidential customer list. Even assuming *arguendo* that the customer's phone number itself could constitute protectable information, the Supreme Court of Virginia has previously held that former employees who used a list of customers compiled solely from their memories had not misused confidential information, because they "did not . . . utilize any property that belonged to [their former employer] when contacting his customers." *Peace v. Conway*, 246 Va. 278, (1993); *see also Phoenix Renovation Corp. v. Rodriguez*, 258 F. App'x 526, 538 (4th Cir. 2007) ("Under Virginia law, however, Rodriguez's and Koci's knowledge of Phoenix's customers

19

and their addresses was neither a trade secret nor confidential or proprietary information belonging to Phoenix.").

Thus, even apart from the unenforceability of the non-solicitation and non-disclosure covenants, Plaintiffs have failed to set forth sufficient facts from which a breach of these covenants can be inferred. *See Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). The Court therefore additionally dismisses Counts II and III on these grounds.

> C.     Tortious Interference with Contractual Relationships (Count IV)

Count IV alleges tortious interference with contractual relations against CABP for intentionally inducing Dealers Choice employees to not perform their employment contracts. Dkt. 37 ¶¶ 168-179. To prevail on a claim for tortious interference with contract rights, a plaintiff must establish: "(i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectance; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted." *DuretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 145 (2009). As Plaintiffs recognize, "Virginia law requires 'knowledge of the relationship or expectancy on the part of the interferor' as an *essential* element of tortious interference claims." Dkt. 47 at 14-15 (citing *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 216 (2014)) (emphasis added).

Even assuming for the purposes of this analysis that all provisions of Dealers Choice's employee contracts are legally enforceable, Plaintiffs' claim against CABP still fails because they do not sufficiently allege that CABP knew of the existence or contents of Plaintiffs' agreements with its employees. Plaintiffs merely state that "CABP was, or should have been, aware of the fact

20

of, and the contents of, Dealers Choices' contractual arrangements" without pleading that CABP knew of the existence of the contracts.  Dkt. 37 ¶ 170.  As the Fourth Circuit has recognized, a plaintiff must allege facts that move allegations regarding "knowledge of contractual rights or business expectancies" beyond speculative conclusions.  *Lokhova v. Halper*, 995 F.3d 134, 148 (4th Cir. 2021).  Here, Plaintiffs have failed to nudge their allegations from possible to plausible, and this count will be dismissed as a result.

D.  Tortious Interference with Business Relationships and Expectancy (Count V)

Count V alleges tortious interference with business relationships and expectancy against all Defendants.  Dkt. 37 ¶¶ 180-188.  To prevail on a claim for tortious interference with business expectancy in Virginia, a party must establish "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, a plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to the plaintiff." *Benton v. Phillips Edison & Co., Ltd.*, 2017 WL 6273361, at *6 (E.D. Va. Dec. 8, 2017) (quoting *Com. Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 300 (1997)).  Furthermore, a claimant "must also allege that the adverse party employed 'improper methods.'" *Com. Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 214 (4th Cir. 2001) (citing *Maximus, Inc. v. Lockheed Info. Sys., Inc.*, 254 Va. 408, 413 (1997)).

Plaintiffs' claim fails on several of these elements.  First, Plaintiffs' allegations concerning the existence of a business relationship or expectancy are exactly the kind of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [that] do not suffice" to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Plaintiffs merely state that "Dealers Choice had, and has, valid and enforceable business relationships and expectancy with

21

its customers and prospective customers" without providing factual support. Dkt. 37 ¶ 181. This lack of specificity resembles the kind of "general expectancy that consumers will purchase" from a plaintiff that "does not suffice" to give rise to a claim. *Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004). Furthermore, Plaintiffs' claims fail insofar as they do not identify any improper methods. Interference involves improper methods "if it is illegal, independently tortious, or violates an established standard of trade or profession." *Dunn, McCormack & MacPherson v. Connolly,* 281 Va. 553, 559 (2011); *see also Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 284 Va. 382, 404 (2012) (providing further examples). Here, Plaintiffs merely allege that CABP offered Brown, Bozeman, and Hamsley "unjustifiable financial inducement." Dkt. 37 ¶ 184. Offering competitive compensation to prospective employees falls well short of "improper methods." Accordingly, this count will be dismissed.

### E.    Business Conspiracy (Counts VI and VII)

Count VI alleges a business conspiracy against all Defendants in violation of Virginia Code §§ 18.2-499 et seq. Dkt. 37 ¶¶ 189-197. Virginia's business-conspiracy law provides for civil relief if a plaintiff establishes: "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring [the] plaintiff in his business; and (2) resulting damage to [the] plaintiff." *U.S. HealthTek, Inc. v. Negosian*, 2025 WL 665533, at *8 (E.D. Va. Feb. 28, 2025); *see* Va. Code § 18.2-499. "It is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, *i.e.*, ill-will, hatred, or spite . . . . Rather, a plaintiff must establish . . . only that the conspirators acted with legal malice, *i.e.*, intentionally, purposely, and without lawful justification." *Dunlap*, 287 Va. at 215 (cleaned up). A cause of action for statutory business conspiracy must be based on an act that is itself wrongful or tortious, not merely a breach of contract. *See id.* at 214-18. And, like fraud, it also must be pleaded with particularity. *Danville*

*Com. Indus. Storage, LLC v. Selective Ins. Co. of S.C.*, 2018 WL 6625078, at *4 (W.D. Va. Dec. 18, 2018) (citing *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 329 (W.D. Va. 2007)).

Plaintiffs' claims in this regard are again fatally conclusory insofar as Plaintiffs do not "plead the requisite concert of action and unity of purpose in more than 'mere conclusory language.'" *Bay Tobacco LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp 2d 483, 499 (E.D. Va. 2003) (quoting *Lewis v. Gupta*, 54 F. Supp. 2d 611, 618 (E.D. Va. 1999)). Plaintiffs here assert a sweeping conspiracy predicated upon assertions devoid of factual support. For instance, Plaintiffs claim that the Defendants coordinated Brown and Bozeman's departures and transitions to CABP, used confidential business information to solicit Dealers Choice customers, and directed employees to solicit customers. Dkt. 37 ¶ 191. Yet Plaintiffs do not allege any specific information concerning the "time, place, or manner of Defendants' alleged agreement." *Azalea Spa & Nails Inc. v. Zhang*, 2023 WL 7647291, at *3 (E.D. Va. Nov. 13, 2023). Irrespective of this fatal flaw, Plaintiffs have also alleged no facts from which the Court can determine that Defendants acted "willfully and maliciously" to injure Plaintiffs. *Dunlap*, 287 Va. at 214. Indeed, as previously discussed, Plaintiffs have failed to properly plead any wrongful or tortious act that could sustain a statutory business conspiracy claim.

Count VII, alleging a common law civil business conspiracy against all Defendants, fails for similar reasons. Dkt. 37 ¶¶ 198-207. To establish a claim for common law business conspiracy, a plaintiff must allege: "(1) an agreement between two or more persons; (2) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means; with (3) resulting damage to the plaintiff." *Azalea Spa & Nails*, 2023 WL 7647291 at *2 (citing *William v. AES Corp.*, 28 F. Supp. 3d 553, 574 (E.D. Va. 2014)). As discussed previously, Plaintiffs have not properly

23

pleaded the existence of an agreement with the intent to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. Thus, this claim similarly fails.

F.       Breach of Fiduciary Duty/Duty of Loyalty and Aiding and Abetting (Counts VIII and IX)

In Count VIII, Plaintiffs claim a breach of fiduciary duty/duty of loyalty against Brown and Bozeman. Dkt. 37 ¶¶ 198-207. As this Court has previously recognized, to prevail on a breach of fiduciary duty claim, a plaintiff must establish: "(1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) subsequent damages attributable to the breach." *M Corp. v. Infinitive, Inc.*, 2024 WL 4696132, at \*4 (E.D. Va. Nov. 6, 2024). Under Virginia common law, any employee owes a fiduciary duty of loyalty to their employer during employment. *See Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 289 (2003). This duty includes "the more specific duty that the employee not compete with his employer during his employment." *Id.* (citing *Hilb, Rogal & Hamilton Co. of Richmond v. DePew*, 247 Va. 240, 249 (1994)).

Plaintiffs argue that, "[w]hile still employed by Dealers Choice," Brown and Bozeman breached their fiduciary duties by "engaging in conduct to disrupt and destabilize Dealers Choice's business operations and to divert and convert Dealers Choice's customers and other business relationships in connection with their move to CABP." Dkt. 37 ¶ 212. However, Plaintiffs claim in this regard is purely conclusory. As Defendants note, there is "no allegation of actual acts either [Brown or Bozeman] undertook while still employed by Dealers Choice." Dkt. 44 at 14. Plaintiffs argue that the case *Alliance Technology Group, LLC v. Achieve 1, LLC*, 2013 WL 143500 (E.D. Va. Jan. 11, 2013) nonetheless supports their position that the misuse of confidential information can be inferred by virtue of subsequent employment with a competitor, and that this use can constitute a breach of fiduciary duty. Dkt. 47 at 24-25. Plaintiffs are correct that the court in *Alliance Technology Group* found such an inference, but only because the plaintiff had there set

24

forth "numerous specific examples" of wrongdoing that occurred while the defendant had worked for plaintiff. *All. Tech. Grp., LLC*, 2013 WL 143500, at *2, *4.[9]  Indeed, such specific examples are exactly what are missing from Plaintiffs' claim.  In the absence of any allegations of acts Brown or Bozeman took while still employed by Dealers Choice, Plaintiffs' claims are merely conclusory.

In Count IX, Plaintiffs allege that CABP aided and abetted the aforementioned breach of fiduciary duty/duty of loyalty.  "Under Virginia law, one who aids and abets a third party's breach of fiduciary duty may be held liable for providing such assistance." *Tysons Toyota, Inc. v. Globe Life Ins. Co.*, 1994 WL 717598, at *3 (4th Cir. Dec. 29, 1994) (citing *Patteson v. Horsley*, 70 Va. (29 Gratt.) 263, 270-71, 273, 276 (1877)).  In asserting aiding and abetting claims, a plaintiff must establish the defendant's "(1) actual knowledge of the underlying fiduciary duty and (2) actual knowledge of the breach of that fiduciary duty by the primary tortfeasor." *Best Med. Intern., Inc. v. Wittmer*, 73 Va. Cir. 504, at *2 (2007) (citing *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 660 (2004)).  Moreover, in addition to knowledge of the breach, a "plaintiff must assert that the defendant somehow recruited, enticed, or participated in the fiduciary's breach of its duty." *Halifax Corp.*, 268 Va. at 661.

As an initial matter, Plaintiffs' claim fails because they have not alleged that either Brown or Bozeman breached any fiduciary duty to Dealers Choice.  Regardless, even assuming that Plaintiffs had established such a breach, each of Plaintiffs' allegations regarding CABP's conduct are conclusory, speculative, and devoid of any factual authority. *See* Dkt. 37 ¶ 220 ("Dealers Choice believes, and therefore avers, that CABP caused the former Dealers Choice employees to breach their fiduciary duties and duties of loyalty to Dealers Choice.").  Indeed, Plaintiffs' claim

---

[9] Not only is the *Alliance Technology Group* decision factually distinguishable, it is not precedentially binding on this Court.

25

largely consists of a regurgitation of the elements at issue. *See* Dkt. 37 ¶ 222; *Iqbal*, 556 U.S. at 678.

G.      Unjust Enrichment (Count X)

Count X alleges unjust enrichment against CABP. *Id.* ¶¶ 225-235. An unjust enrichment claim exists where "(1) a plaintiff confers a benefit on a defendant; (2) the defendant knows of the benefit and should reasonably expect to repay the benefits; and (3) the defendant accepted or retained the benefit without paying for the value of the benefit." *Zhengfeng Bo v. Tang*, 2024 WL 3823780, at *4 (E.D. Va. Aug. 14, 2024) (citing *T. Musgrove Constr. Co. v. Young*, 298 Va. 480, 486 (2020)). Plaintiff argues that Dealers Choice conferred a benefit upon Brown and Bozeman "in the form of access to its most sensitive confidential and proprietary business information," and that Brown and Bozeman disclosed this information to CABP for the benefit of CABP. Dkt. 37 ¶¶ 225-235.

Plaintiffs' claim fails in the first instance because no benefit has been properly pleaded to have been conferred on Defendants. To sustain their unjust enrichment claim, Plaintiffs simply assert that "Dealers Choice believes, and therefore avers, that Brown and Bozeman disclosed Dealers Choice's confidential and proprietary business information to CABP" without providing further factual support. *Id.* at 229. As discussed previously, Plaintiffs' assertions that confidential information has been disclosed to CABP are without merit.

Even if Plaintiffs have conferred a benefit upon Defendants, an unjust enrichment claim would still fail because Plaintiffs have not sufficiently pleaded that Defendants were reasonably expected to repay this benefit. "One may not recover under a theory of implied contract simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich v. Jones*, 245 Va. 465, 476

26

(1993) (citing *Mullins v. Mingo Lime & Lumber Co.*, 176 Va. 44, 51 (1940). Plaintiffs have alleged no facts in the Amended Complaint that suggest Defendants had promised to pay Plaintiffs for any benefit Defendants could have received. *See* Dkt. 37 ¶¶ 225-235. Plaintiffs' claim therefore fails on this ground also.

## IV.   CONCLUSION

Plaintiffs have not pleaded facts that would allow the Court to draw a reasonable inference that Defendants are liable for the misconduct alleged. Plaintiffs have thus failed to state a claim upon which relief can be granted with respect to all counts. Furthermore, several covenants contained within Dealers Choice's employment contracts are unenforceable as a matter of law, and Plaintiffs' claims founded upon these unenforceable covenants also fail on this ground.

The Court additionally notes that Plaintiffs have already filed an Amended Complaint and that the Amended Complaint follows the provision of evidence in response to the request for injunctive relief. Plaintiffs have also had sufficient time to add further support to their allegations following this Court's detailed Memorandum Opinion and Order on their request for injunctive relief, in which the Court previewed many of the deficiencies noted here. Moreover, given the testimony that the Court heard during that hearing, it appears that Plaintiffs have no further facts to add in support of their claims. The Court therefore finds that allowing further amendment would be futile.

Accordingly, it is hereby ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 43) is GRANTED; and it is

FURTHER ORDERED that the prior motion to dismiss (Dkt. 33), filed before Plaintiff amended its complaint, is DENIED as MOOT; and it is

FURTHER ORDERED that Plaintiffs' Request for Hearing (Dkt. 51) is denied as moot; and it is

FURTHER ORDERED that the Amended Complaint (Dkt. 37) is DISMISSED with prejudice and the Clerk of the Court is DIRECTED to place this matter among the ended causes.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
August 7, 2026

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge